May it please the Court, Jan Little of Kecker and Van Nest, on behalf of third-party appellants, Attorneys Gross, Chiari, and D.L.A. Piper. We have three groups of appellants represented today, and with the Court's permission, Council will split our argument time as follows. I will argue for about five minutes on behalf of the D.L.A. appellants and address the issues of the lack of notice, the vagueness, and the overbreath of the sanctions order. Mr. Benjamin will argue for about five minutes on behalf of Attorneys Hayes and Morgan, and he will address the merits, the underlying attorney conduct at issue, and our view that the attorneys here acted in good faith. And finally, Ms. Barron will argue on behalf of Motricity, who is the client in the underlying action, and she will take about three minutes to address issues specific to the client's role in this. And then on behalf of all appellants, we'd like to save two minutes for rebuttal, should it be necessary. This is an appeal from a district court order entered on June 19, 2009, and that order did three things. It remanded a removed case back to Superior Court, it issued monetary sanctions of fees and costs, and it imposed an additional non-monetary sanction. Now, the first two items, the remand and the fees and costs, we're not contesting here. What we are contesting is the non-monetary sanction. In rejecting the second removal petition filed in this case, the district court stated as follows. Quote, in view of repetitive and contemptuous conduct, the court orders that in all future cases where this defendant or these attorneys have removed or remove an action under the Class Action Fairness Act, defendant and or counsel shall file a copy of this order with the court and serve it on opposing counsel. Now, this sanctions order was entered sua sponte. No one had filed a motion for sanctions. There was no prior notice, and there was no opportunity for any party or counsel to be heard, either by briefing or by argument, as to either the basis for the sanctions motion, that is to say the propriety of the underlying conduct, or the scope of the sanctions order, which is to say its geographic scope, its duration in time, and which attorneys it applied to. Hey, speaking of the geographic scope, as I understand it, there's an almost identical series of events in the Western District of Washington. Is that right? There was a state court case of removal and remand? Yes, that is true, Your Honor. And the judge there, whoever it was, I think it was Judge Beckman. Yes, Your Honor. But the judge there, well, tell me, did the judge there impose sanctions? Yes, Your Honor. In that case, there actually was a motion for sanctions that was filed and briefed, and the judge in that case did impose sanctions, simply monetary sanctions. She did not impose any kind of a sanction such as this. Was there any request or thought given in that case of, you know, I'll call it any kind of nonmonetary sanction? Not that I'm aware of, Your Honor. It was not asked for. The reason I'm concerned a little bit in this case is, you know, the judge here makes like a nationwide order, I'll say, right, and affects, you know, the practice of law in the Western District of Washington where you have to assume the judge rendered what she thought was the appropriate sanction. That's correct. The judge, you know, didn't impose any nonmonetary sanctions, but yet now this nonmonetary sanction applies in the Western District of Washington, too, right? The order in this case is not limited in geographic scope. It's different than, for example, the order in the Weissman case where it was specifically limited to the Northern District of California. In this case, there's no such limitation, and it would be our position that it is overbroad. Sanctions should be limited to the least severe measure adequate to deter the conduct in question. And in this particular case, it's far too broad. I would refer the Court to the Manez case, Manez v. Bridgetone, which is cited at page 22 of our brief, which reversed a sanction that was addressing other suits and other courts. Let me – I'm sorry. Let me make sure I understand. The sanction portion of this order you regard as what? Well, there's monetary sanctions under 1447C which we do not contest. Okay. But there's this additional nonmonetary sanction which requires the defendant, the Motricity Company, or these attorneys. And again, it's vague. We don't know whether these attorneys means the particular attorneys who signed the removal petition or whether it means counsel of record, which is DLA Piper. But the further order that Motricity pay plaintiffs reasonable attorney fees and costs, that's a – that's the monetary sanction that you are not contesting? Correct. We're not contesting that. And we would submit, Your Honor, that that sanction is enough. If the goal here is to impose sanctions that are sufficient to deter the conduct, we would submit that that's enough and that this Court has the power to simply reverse the nonmonetary sanctions and we're done. That was what was done in the Gibson case. In the Gibson case – So you don't have any objection to lack of notice for the monetary sanctions? We could have objected, but we choose not to. But you choose not to. This case is similar to the Gibson case where there were Rule 11 sanctions imposed, in that case monetary Rule 11 sanctions of $1,500 and fees and costs. And this Court reversed the Rule 11 sanctions but maintained the fees and costs. And we would ask that this Court do the same here. With respect to the – Well, is that because – why? Why should we just – just explain. Why should we just completely vacate it and that's the end of it? Are you saying that the district court doesn't have any authority to enter an order like this? Well, the district court would have the authority to enter the order if they had given an opportunity to be heard and noticed and if the issue had been litigated. We would submit that were these issues – What if there were a sufficient basis in fact for whatever was done, right? Well, but we don't – In the record. I believe there is sufficient basis for you all to look at this and decide that it was a good faith act of the attorneys to file the second removal petition. It was an other paper, in our view, as defined under 1446. That issue you could determine de novo as a matter of law. Well, should we do that? I mean, I'm not quite sure why we should do that. If the problem here is that the district court without notice in giving you an opportunity to be heard issued a sanction order that looks a little unusual, but the case she obviously experienced, Judge obviously thought that what you did was pretty unusual. Right. Why wouldn't the appropriate remedy be to send it back and have her consider and make a record as to what the basis for the sanction so that somebody can look at it, because I'm not sure we have enough to – You certainly could do that, and that's what was done in the Weissman case. It was sent back because of the lack of notice. On the other hand, in the Gibson v. Chrysler case, the Ninth Circuit actually looked at the propriety of the removal and determined that it was properly removed. So you could do it either way. Also in the Lazar case – I didn't write that, but it was on the panel. I didn't recall it since I read the case again, but in that case, it was just a straight reversal without a remand from which one could imply that district court wasn't authorized to conduct any further proceedings on that, on the sanction issue. Right? Yes, Your Honor. So what is the standard we should use to decide, you know, whether to remand for a new hearing or just reverse? The standard of review for the propriety of the sanctions is abuse of discretion, but the standard of review for the legal issues is de novo, and this is discussed in the Gibson case where they decide that they can review the propriety of the removal under a de novo standard. Just briefly, I touched on the vagueness that the order, as written, refers to these attorneys and counsel, and it's really unclear whether it applies to just the particular attorneys or all attorneys in the firm. Again, unlike the Weissman case, which specifically called out Mr. Chuck. You didn't file a motion for reconsideration or clarification or anything like that, did you? No, we did not, Your Honor. The local rule 7.9 on motions for reconsideration is fairly stringent, and arguably we wouldn't have qualified under that rule for reconsideration. Moreover, there really is not any kind of exhaustion requirement to pursue a motion to reconsider before filing an appeal. The Cole case makes that clear. So I've touched on the notice issue, the vagueness and overbreadth. If the Court has questions on those issues, I'm happy to address them, and otherwise I'd like to yield my time to Mr. Benjamin. Good morning. May it please the Court. My name is Niel Benjamin, and I'm appearing on behalf of the Bradley Aaron Appellants. That is Mr. Russell Morgan and Mr. Scotty Haynes. In addition to Ms. Little's arguments, and based on this Court's jurisprudence on contemptuous and sanctionable conduct, I'll be arguing that my client's behavior was neither contemptuous nor sanctionable. In gold video, this Court held that civil contempt consists of a party's disobedience to a specific and definite order. Do you think this is a, I mean, this order is tantamount to a contempt order? We do think that this order is tantamount to a contempt order, Your Honor, and we think that for those reasons, absent our client's failure to act in good faith or to reasonably interpret the district court's order, that it should be reversed. In Reno Air Racing Association, this Court held that a party should not be held in contempt if its actions appear to be based on a good faith and reasonable interpretation of a court's order. With respect to the Rule 11 sanctions, to the extent in which the district court did indeed impose sanctions under Rule 11, following this Court's interpretation of that rule, as addressed in Riverhead Savings Bank, the appellate court should reverse sanctions imposed under Rule 11 if the sanctioned attorney made a plausible and good faith argument. Sanctions are prescribed only in exceptional circumstances where a claim or motion is frivolous or without merit. If the district court imposed sanctions here, under its inherent authority, under Title 28, Section 1927, then there must be a finding of bad faith. Here, Your Honors, we don't think that any such evidence exists, and we submit that those standards have not been met. Keeping these standards in mind and stepping into my client's shoes with respect to its options regarding the Edelson Declaration, this Court can and should conclude all of the following. First, the district court's order did not address the Edelson Declaration or otherwise adequately inform appellants that it considered it. Second, even if the court disagrees with that and believes that the district court implicitly rejected the arguments pertaining to the Edelson Declaration, appellants reasonably believed that the Edelson Declaration presented a new and different ground for removal. And third, the Edelson Declaration is other paper under Title VI, Section 1446B, and presented a new and different ground for removing the 2009 Walker action. There's no question that under Kirkbride, appellants did not violate the district court's order if it removed the 2008 Walker action based on the grounds of it being new and different information for purposes of removal. But either way, we submit that the record establishes that my clients acted based on their good faith and reasonable interpretation of the district court's reasons for remanding the 2008 Walker action. So their conduct is neither contemptuous nor sanctionable. I'd like to briefly address some of the facts that support these conclusions. Appellants removed the 2008 Walker action based on the argument that the cost of complying with the plaintiff's request for injunction relief would exceed the $5,000 requirement under CAFA for removal in a class action situation. That was the basis for removing the 2008 Walker action. It was not removed based on the argument that plaintiff's damages claim created the amount of controversy. We submit that the first order helps to prove this point. There, the district court explained, and I quote, motricity makes no attempt to calculate the damages sought by plaintiffs and the class. The district court went on to explain that motricity's arguments regarding the cost of complying with injunctive relief requested by plaintiffs did not alone satisfy the jurisdictional amount of controversy. Now, at this point, it is important to keep in mind that motricity learned of the Edelson Declaration during the time between when motricity filed its first notice of removal, but before the district court issued its first order. And it learned of that declaration only because plaintiff's counsel in a different matter litigated between the parties filed that declaration in Washington State. Although the law is unsettled on this point, existing legal authority supports motricity's belief that the Edelson Declaration may be in other paper under Section 1446B. So motricity filed a motion to leave, for leave to file the Edelson Declaration, as supplementary evidence in support of its first notice of removal. But on the very next day, Your Honors, the district court issued the first order without ruling on the motion for leave to file the Edelson Declaration. And as I just explained, the first order did not mention the Edelson Declaration, but instead specifically stated that motricity made no attempt to calculate the damages sought by plaintiff and the class. You're reading from the order itself. That's the order of what, June 19? I'm sorry, Your Honor. Can you repeat your question? I say you're reading from the district court's order. That's the first order, Your Honor. Yes. I believe that that is. Order of what date? I believe that date is March. March 11? Or June 19, 2009, Your Honor. Say again, June 19? Let's make sure I have that right. It's the March 10 order, Your Honor. March 10. Well, maybe you can find the ER number at the bottom. What's that? 18. 18? Thank you. March 10, 2009. My apologies. Go ahead. I'm sorry. Didn't mean to interrupt. No. No problem, Your Honor. That order stated that motricity made no attempt to calculate those damages sought by plaintiff and the class. But motricity attempted to submit the Edelson Declaration for exactly that purpose, calculating the damages sought by plaintiff and the class. Given that the district court stated that motricity made no attempt to do so, it was certainly reasonable for motricity to believe that, one, the district court did not consider the Edelson Declaration, and, two, that the first order remanding the 2008 Walker action was based only on motricity's injunction argument. Additionally, the Federal Practice Guide clearly states that attorneys should act prudently and treat documents like the Edelson Declaration as other paper for purposes of removal. We submit that these facts militate against the finding that our client's conduct was contemptuous or was otherwise a result of bad faith. Okay. So what is the belief that you're asking for? We believe that the court had enough information to reverse the notice order. Just the notice order? To reverse the notice order, Your Honor. That's all. When you say reverse the notice order, should we give the remand until the district court has a second crack at, you know, looking at this if it wants to? Well, we don't believe that that's necessary. We believe that on the record and considering the facts that we've argued here today, that reversing the notice order, given the fact that it's in excess of what's necessary in order to deter this type of conduct, given an absence of finding of bad faith, given the fact that the client's acted based on a reasonable interpretation of that order, that there's enough there to reverse that order. How do the monetary sanctions relate to your client? Well, as I stand here before you today, it's my understanding that as counsel, I'm not certain whether or not they are responsible for paying that out of pocket or how that is. You're not challenging them. I am not, Your Honor. Well, okay. Additionally, as I was stating, absent of finding of bad faith, we submit that the district court cannot issue these sanctions under its inherent powers and that it therefore abuses discretion. I think you've used your time. Thank you. Thank you. Well, let's see. What are we doing here? What do you have to say? Very little, Your Honor. Can I give the third lawyer a chance? Well, the time has been used, but we'll give her the – let's just – let's hear her. My colleague wants to hear from the third lawyer, so we'll give you your minute or whatever you've got. Good morning. May it please the Court, my name is Deborah Barron, and I represent Matricity Inc. in this matter. As to Matricity, who was a represented client, sanctioned without notice or an opportunity to be heard, the requirement that a company go into all future class actions in a federal court prejudiced by the taint of a scarlet letter is unjust and disproportionately severe. Matricity is only appealing the notice sanction as well. There are situations in which sanction of a client is appropriate. This is not one of those cases. Matricity here did not engage in sanctionable conduct. They did not mislead their attorneys as to facts. They did not withhold discovery. And even the Court's order here makes clear – finds that there's no sanctionable conduct or representation by Matricity that was cited in the order. The sanction is especially unjust because it was based on a removal under the Class Action Fairness Act, and removal is a highly procedural and technical complex area of law in which a client has little involvement. Here the sanction was based solely on counsel's determination that a declaration qualified as other paper and that it was necessary to file a second removal in order to protect Matricity's rights and a failure to file a notice of related case, and those are the very type of procedural decisions. We're getting a lot of experience under the Class Action Fairness Act. Because Matricity did little more than rely on counsel's decision that a second removal petition was necessary to protect the company's rights, the sanction was abuse of discretion, and we therefore ask the Court to reverse the sanction here. If there are no more further questions? Thank you. May it please the Court. My name is Michael Aschenbrenner of Edelson McGuire, and I represent the plaintiff, Appelli, Ms. Walker, in these matters. I'll be brief, Your Honors. As stated in our Respondent Brief, we take no position in this matter. Provided there are no questions, Respondent rests. No questions? No questions. All right. Thank you, Your Honors. Thank you. One side used no time and the other side used more time, so are there any further questions of the appellants? No, thank you. All right. Thank you. Your Honor, I should have mentioned at the beginning, we did file a request for a judicial document, a motion to supplement the record. Right. We have that. Okay. Okay. We'll take the matters under advisement. The case is ordered and submitted, and the Court stands adjourned.
judges: Stotler, Schroeder, Tashima